UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANTIAGO SANCHEZ,

        Petitioner,

    v.

JOEL MARTINEZ,

        Respondent.

No.  2:17-cv-0455 DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

      Petitioner is a state prisoner proceeding with a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his convictions imposed by the Sacramento County Superior Court in 2013 for crimes involving sexual misconduct with children.  Petitioner alleges: (1) there was insufficient evidence to support count 1; (2) the exclusion of impeachment evidence violated his rights to due process; (3) numerous instances of prosecutorial misconduct; (4) admission of evidence of Child Sexual Abuse Accommodation Syndrome violated his due process and other rights; and (5) the cumulative effect of all errors violated due process.  For the reasons set forth below, this court will recommend the petition be denied.

////

////

////

////

1

**BACKGROUND**

**I. Facts Established at Trial**

The California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant was 19 years old and volunteering at an after-school program when he met S.S. Despite the fact defendant was seven or eight years older than S.S., the two became friends. About a month later, defendant met S.S.'s mother, C.C., at the after-school program and was invited over to their house to meet her husband, J.A., with whom defendant shared an interest in automotive repair and body work. At the house, defendant also met the other children in the household, D.C., M.C., and their younger brother, E.C. Over the course of about a year, defendant and J.A. became friends and worked on cars together. Defendant also routinely watched the children when their parents went out.

> In August 2011, defendant committed the crimes involved in this case. He was 20 years old. His victims, D.C. and M.C., were eight years old and 10 years old, respectively.

> *Crimes against M.C.*

> Defendant stayed the night at the family's house on August 1, 2011. While watching a movie with the children in the living room, defendant touched M.C. twice with his hand on her vaginal area, over her clothes, removing it about "two seconds" after M.C. told him to "stop." The next morning, defendant was asked to watch the children while C.C. went to work and J.A. went to Pick–n–Pull. He agreed. Before J.A. left, M.C. told him defendant was "bothering" her; not understanding the seriousness of the situation, J.A. told her to "just tell him to stop bothering you." That day, the children had various chores to do. Defendant contributed by helping S.S. with the yard work. As defendant watered the front lawn, M.C. passed by him on her way to get a hedge trimmer for S.S. Defendant reached out and briefly touched her chest with the back of his hand. Believing defendant did so "on purpose" because "he was smiling," M.C. told him to "stop." Defendant responded that "he wasn't doing anything wrong." When she again passed by defendant to get a shovel for S.S., defendant again reached out and briefly touched her with the back of his hand, this time on her vaginal area. M.C. again told him to "stop." Defendant again said he "didn't do anything." Defendant confirmed in his statement to police that he touched M.C.'s chest "like one time" and he touched her vaginal area "like twice," always over her clothing.

> Based on these facts, as previously mentioned, defendant was convicted of two counts of committing a lewd or lascivious act on M.C., a child under the age of 14 years.

////

2

*Crimes against D.C.*

After defendant finished watering the lawn, the children asked to play in the swimming pool. Defendant agreed. While he and S.S. finished up the yard work, the other children went inside the house to change into swimming suits. After the children had changed, defendant went into S.S.'s bedroom to change into some shorts. The record is unclear as to whether D.C. was already in the bedroom when defendant came in, or whether she came into the room after defendant had changed. Either way, she began playing with S.S.'s guitar on the bottom bunk of the bunk beds S.S. shared with his younger brother, E.C. Defendant took the guitar away and climbed on top of her. By his own account, he pulled her swimming suit to the side to expose her vagina, and pulled up one of the leg openings of his shorts to allow him to pull out his penis. He then attempted to insert his penis into D.C.'s vagina, but was unsuccessful because his penis was not erect.

Unbeknownst to defendant, S.S. had entered the house looking for D.C. Having seen defendant touch M.C.'s buttocks on two previous occasions, S.S. decided to keep "a closer eye on him." With this purpose in mind, S.S. entered the house quietly through the back door, "snuck around the corner to check the living room," and then "went down the hallway a little." From the hallway, S.S. saw defendant on top of D.C. on the bed. Defendant's "hip area ... was moving up and down." D.C. told defendant to "[s]top." Defendant responded: "Just go with it." S.S. "stood there for about a minute" trying to decide what to do. He considered confronting defendant, but "figured if [he] did that, that [defendant] would leave and would most likely, probably, get away with it." Instead, S.S. left the house "to go call the cops." On his way out, S.S. told M.C. to "stay outside" and that he "would be back." He then got on his bicycle and rode to a neighbor's house. When this neighbor was not home, S.S. rode to a nearby gas station and used a stranger's cell phone to call 911.

Meanwhile, according to defendant's statement to police, he stopped his assault on D.C. shortly after it began and allowed her to go outside to play with her siblings. Defendant also told police he penetrated D.C.'s vagina with one of his fingers while giving her a piggyback ride down the hallway. His statement is unclear as to when exactly this took place, except that it happened before he tried having sex with her and she was already wearing her swimming suit. Regardless of the precise timing, defendant admitted: "I was tryin[g] to put it in there. My finger." He also admitted he succeeded in penetrating D.C.'s vagina with his finger. When asked whether it turned him on, defendant answered: "Uh, yes, a little." When asked whether it probably caused him to then try something more with D.C., defendant responded: "Yeah."

Based on these facts, as previously mentioned, defendant was convicted of one count of sexual penetration, one count of attempted sexual intercourse, and two counts of committing a lewd or lascivious act on D.C., a child under the age of 14 years.

////

3

Police arrived at the house a short time after S.S. made the call to 911. Defendant was taken into custody, advised of his *Miranda* rights and questioned. He eventually admitted to touching M.C.'s vagina and chest over her clothes, penetrating D.C.'s vagina with his finger while giving her a piggyback ride, and attempting to penetrate her vagina with his penis while on the bed. Defendant also wrote down that he "made a mistake" when he "tr[ied] to put something in [D.C.]," but he "was not thrusting" and stopped when she told him to stop. He also wrote a letter apologizing to the family for his actions.

People v. Sanchez, 246 Cal. App. 4th 167, 170-72 (2016) (footnotes omitted).

## II. Procedural Background

### A. Judgment and Sentencing

On February 15, 2013, a jury found petitioner guilty of the following:

Count 1 - sexual digital penetration of a child under ten years of age in violation of Cal. Penal Code § 288.7(b);

Counts 2, 4, 5, and 7 - lewd and lascivious act upon a child under the age of fourteen in violation of Cal. Penal Code § 288(a);

Count 3 - attempted sexual intercourse or sodomy of a child under ten years of age in violation of Cal. Penal Code §§ 664/288.7(a); and

Count 6 - battery in violation of Cal. Penal Code § 242.

The jury found true the allegation that appellant committed the above offenses against more than one victim within the meaning of California Penal Code § 667.61(e)(4). (2 RT 1081-82.)

On March 15, 2013, the court found petitioner ineligible for probation and sentenced him to an aggregate indeterminate term of 65 years-to-life in prison. (2 RT 1096-99.)

### B. State Appeal and Federal Proceedings

On March 15, 2013, petitioner appealed to the California Court of Appeal, Third Appellate District, case no. C073360.[1] (1 CT 484.) In 2016, the Court of Appeal affirmed

---

[1] Respondent lodged the following portions of the state court record: petitioner's opening brief on appeal (Lodged Document "LD" 1), respondent's response (LD 2), petitioner's reply (LD 3), the decision of the California Court of Appeal (LD 4), the petition for review to the California Supreme Court (LD 6), and the California Supreme Court's denial of review (LD 7). Respondent also lodged the Clerk's Transcript ("CT"), the Record of Transcript ("RT"), and the Record of Transcript on Remand ("RT REMAND").

4

1  petitioner's convictions, but remanded the matter for resentencing with directions to the superior

2  court to exercise its discretion under rule 4.425 of the California Rules of Court in deciding

3  whether to impose consecutive or concurrent sentences for petitioner's crimes.  Sanchez, 246 Cal.

4  App. 4th at 170.

5         On May 9, 2016, petitioner filed a petition for review in the California Supreme Court,

6  case no. S234355, which was denied in a summary order on June 29, 2016.[2]  (LD 6, 7.)  On

7  August 24, 2016, on remand, the trial court resentenced appellant to an aggregate indeterminate

8  term of 50 years to life.  (RT REMAND 2-5.)

9         On March 1, 2017, petitioner filed the present petition for writ of habeas corpus with this

10  court.  (ECF No. 1.)  Respondent filed an answer (ECF No. 15) and petitioner filed a traverse

11  (ECF No. 24).

12         **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

13         An application for a writ of habeas corpus by a person in custody under a judgment of a

14  state court can be granted only for violations of the Constitution or laws of the United States.  28

15  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

16  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

17  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

18         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

19  corpus relief:

20         An application for a writ of habeas corpus on behalf of a person in
        custody pursuant to the judgment of a State court shall not be granted
21      with respect to any claim that was adjudicated on the merits in State court
        proceedings unless the adjudication of the claim –
22

23         (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
24      determined by the Supreme Court of the United States; or

25  ////

26  _____

27  [2] In the answer, respondent frequently refers to this petition as a petition for a writ of habeas
   corpus.  That appears to be an error.  The document is a petition for review of the Court of
28  Appeals' decision.  (See LD 6.)  There is no indication that petitioner filed any petitions for
   habeas corpus relief in the state courts.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not

6

enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.).  Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record.  Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate."  Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable.  Id. at 1147.  Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility."  Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

If a petitioner overcomes one of the hurdles posed by section 2254(d), the federal court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

1

**ANALYSIS**

2     Petitioner alleges the following claims: (1) there was insufficient evidence of digital

3 penetration to support count 1; (2) the exclusion of impeachment evidence violated his rights to

4 due process; (3) numerous instances of prosecutorial misconduct violated his due process rights;

5 (4) admission of evidence of Child Abuse Accommodation Syndrome violated his due process

6 rights; and (5) the cumulative effect of all errors violated due process. For the reasons set forth

7 below, this court finds petitioner fails to satisfy the requirements of 28 U.S.C. § 2254(d) and

8 recommends the petition be denied.

9 **I. Claim 1 – Insufficient Evidence of Corpus Delicti**

10     Petitioner argues his conviction on count 1 violates the "corpus delicti rule" because there

11 was no evidence to support the act of digital penetration apart from petitioner's confession to it.

12 (See ECF No. 1 at 59-60.)

13     **A. Applicable Legal Standards**

14     The United States Supreme Court has held that when reviewing a sufficiency of the

15 evidence claim, a court must determine whether, viewing the evidence and the inferences to be

16 drawn from it in the light most favorable to the prosecution, any rational trier of fact could find

17 the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,

18 319 (1979). A reviewing court may set aside the jury's verdict on the ground of insufficient

19 evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith,

20 565 U.S. 1, 2 (2011) (per curiam). Moreover, "a federal court may not overturn a state court decision

21 rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with

22 the state court. The federal court instead may do so only if the state court decision was

23 'objectively unreasonable.'" Id. (citing Renico v. Lett, 559 U.S. 766 (2010)). The Supreme

24 Court cautioned that "[b]ecause rational people can sometimes disagree, the inevitable

25 consequence of this settled law is that judges will sometimes encounter convictions that they

26 believe to be mistaken, but that they must nonetheless uphold." Id.

27 ////

28 ////

**B.  State Court Opinion**

Defendant contends the evidence was insufficient to establish the corpus delicti of the crime of sexual penetration. He is mistaken.

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying exclusively upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.] Though mandated by no statute, and never deemed a constitutional guaranty, the rule requiring some independent proof of the corpus delicti has roots in the common law. [Citation.] California decisions have applied it at least since the 1860's. [Citation.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169, 119 Cal.Rptr.2d 903, 46 P.3d 372 (*Alvarez*).) "The purpose of the corpus delicti rule is to assure that 'the accused is not admitting to a crime that never occurred.' " (*People v. Jones* (1998) 17 Cal.4th 279, 301, 70 Cal.Rptr.2d 793, 949 P.2d 890 (*Jones*), quoting *People v. Jennings* (1991) 53 Cal.3d 334, 368, 279 Cal.Rptr. 780, 807 P.2d 1009 (*Jennings*).)

"The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues. [Citations.]" (*Alvarez*, *supra*, 27 Cal.4th at p. 1171, 119 Cal.Rptr.2d 903, 46 P.3d 372; *People v. Robbins* (1988) 45 Cal.3d 867, 885–886, 248 Cal.Rptr. 172, 755 P.2d 355 (*Robbins*), superseded by statute on another ground as stated in *Jennings*, *supra*, 53 Cal.3d at p. 387, fn. 13, 279 Cal.Rptr. 780, 807 P.2d 1009.)

Defendant argues: "There was no evidence of count one, digital penetration of [D.C.] when she was on [defendant's back (288.7, subd. (b)), other than [defendant's] own admission, in the course of the police interrogation, that he had touched her in that way while giving her a piggyback ride." We agree defendant's admission is the only direct evidence of the digital penetration. D.C. did not testify to this specific criminal act and did not reveal it in the special assault forensic evaluation (SAFE) interview. Nor did anyone else witness the crime. Nevertheless, we conclude the circumstantial evidence is more than sufficient to establish the corpus delicti of sexual penetration.

The court then went on to examine in detail the facts and holdings in <u>Jones</u>, 17 Cal. 4th 279, <u>Jennings</u>, 53 Cal.3d 334, and <u>Robbins</u>,  45 Cal.3d 867.  The court noted that the corpus delicti

rule required only "independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved."  It then found that there was

> both direct and circumstantial evidence of sexual activity engaged in by defendant against D.C., and since she was eight years old at the time, [and] there can be no dispute the activity was criminal in nature. We hold this evidence is more than sufficient to provide a prima facie showing of injury, loss, or harm by a criminal agency, such that defendant's confession may be considered for its full value to fill in the precise nature of the crimes committed against D.C.

The court concluded that "there was sufficient evidence, independent of defendant's confession to police, to establish the corpus delicti of sexual penetration."  Sanchez, 246 Cal. App. 4th at 173-78.

### C.  Analysis of Claim 1 – Insufficient Evidence of Corpus Delicti

Petitioner argues the "corpus delicti rule" requires corroboration for a confession and, here, the prosecution presented no evidence independent of petitioner's confession that he digitally penetrated D.C. during a piggyback ride.  Therefore, petitioner continues, there was insufficient evidence to convict him of Count 1.  Petitioner points to D.C.'s testimony that he never gave her a piggyback ride (1 RT 384, 388), and never put anything inside her (1 RT 388, 392).

Respondent argues that petitioner fails to show the rule he seeks was clearly established by the Supreme Court within the meaning of § 2254(d).  The Court of Appeal so held.  See Sanchez, 246 Cal. App. 4th at 173 ("Though mandated by no statute, and never deemed a constitutional guaranty, the rule requiring some independent proof of the corpus delicti has roots in the common law.")  This court agrees.

Petitioner's only federal law basis for his claim is the following Supreme Court statement - "[i]t is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused."  Wong Sun v. United States, 371 U.S. 471, 488 (1963) (citing Smith v. United States, 348 U.S. 147, 153 (1954)).  To the extent petitioner argues that this "corpus delicti rule" was violated by a lack of corroboration for his confession to digital penetration of D.C., he fails to show the rule is clearly established federal constitutional law for purposes of 28 U.S.C. § 2254(d).

11

While the Supreme Court has held that such corroboration is necessary in federal criminal cases, Opper v. United States, 348 U.S. 84, 89-90 (1954), the Supreme Court has not held that states are constitutionally required to enforce an independent corroboration rule.  Thus, in Opper, Smith, and Wong Sun, the Supreme Court established a federal common law rule that requires corroboration of confessions by criminal defendants.  The Supreme Court has not, however, held that rule to be an element of constitutional due process.  See Jackson v. Virginia, 443 U.S. 307, 330 n.1 (1979) (Stevens, J., concurring) (noting the "federal nonconstitutional rule, which surely would not apply in habeas review of state convictions, 'that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused'" (internal citation omitted)); Tash v. Roden, 626 F.3d 15, 18 (1st Cir. 2010) ("Opper and Smith made no reference to constitutional compulsion; corroboration was merely deemed a better rule sanctioned by common law."); Johnson v. Gibson, No. 99-7089, 2000 WL 1158335, at *9 (10th Cir. Aug. 16, 2000) ("Although Oklahoma law relies on authority from federal criminal cases, petitioner fails to cite any clearly established Supreme Court authority holding that the need for independent corroboration of a defendant's confession is constitutionally required."); Williams v. Chapleau, No. 97-6015, 2000 WL 32015, at *4 (6th Cir. Jan. 4, 2000) ("Although federal courts typically require corroboration of a criminal defendant's out-of-court admissions, ... we are aware of no authority for the proposition that the Constitution requires state courts to apply a similar rule."); Lucas v. Johnson, 132 F.3d 1069, 1078 (5th Cir. 1998) (petitioner's argument that the state failed to corroborate his confession did not raise an issue of constitutional dimension); Aschmeller v. South Dakota, 534 F.2d 830, 832 n.1 (8th Cir. 1976) (noting that "[t]he corroboration rule has never been termed a constitutional requirement"); Amezcua v. Lizarraga, No. 18-cv-1317 GPC (MSB), 2019 WL 2289323, at *13 (S.D. Cal. May 29, 2019) ("Although the corpus delicti rule is applied in federal criminal cases, it has not been held by the Supreme Court a requirement under the U.S. Constitution." (footnote omitted)); cf. Al Alwi v. Obama, 653 F.3d 11, 19 (D.C. Cir. 2011) ("The corroboration rule is a 'common law' rule, with neither constitutional nor statutory bases . . . .").

////

At least one federal court referred to the corroboration requirement as a rule of constitutional dimension.  See Evans v. Luebbers, 371 F.3d 438, 443 n. 3 (8th Cir. 2004) (referring to Wong Sun and Smith as announcing a "clear constitutional rule . . . that a defendant's conviction not rest solely upon his or her confession or extra-judicial statements"). However, the weight of authority is to the contrary.  Further, to meet the § 2254(d) standard, petitioner must cite to clearly established Supreme Court authority that the Constitution requires independent corroboration for a defendant's confession.  He fails to do so.

To the extent petitioner argues there was insufficient evidence to support his conviction on Count 1, that argument fails as well.  The jury heard evidence that petitioner confessed to digitally penetrating D.C. as well as evidence of other sexual abuse of both D.C. and M.C. Petitioner fails to show that no rational trier of fact could have agreed with the jury's finding of guilt on Count 1.  Cavazos, 565 U.S. at 2.  Petitioner's first habeas claim should fail.

## II. Claim 2 – Exclusion of Impeachment Evidence

Petitioner next argues that his due process rights were violated when the trial court excluded evidence to impeach S.S., the older brother of the victims and the prosecution's primary witness.  (ECF No. 1 at 66-74.)

### A.  Applicable Legal Standards

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  It is also true, however, that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)).  "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Scheffer, 523 U.S. 303 at 308 (quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)).  A rule is "arbitrary" where it "exclude[s] important defense evidence but ... [does] not serve any legitimate interests."  Holmes, 547 U.S. at 325.  "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists

1   could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'"

2   Nevada v. Jackson, 569 U.S. 505, 508-09 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102

3   (2011)).  "Only rarely [has the Supreme Court] held that the right to present a complete defense

4   was violated by the exclusion of evidence under a state rule of evidence."  Id. at 509.

5           The United States Supreme Court has not "squarely addressed" whether a state court's

6   exercise of discretion to exclude testimony violates a criminal defendant's right to present

7   relevant evidence.  Moses v. Payne, 555 F.3d 742, 758-59 (9th Cir. 2009).  Nor has the Court

8   clearly established a "controlling legal standard" for evaluating discretionary decisions to exclude

9   such evidence.  Id. at 758; see also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) ("Between

10  the issuance of Moses and the present, the Supreme Court has not decided any case either

11  'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete

12  defense or 'establish [ing] a controlling legal standard' for evaluating such exclusions.").  Rather,

13  the Supreme Court has focused only on whether an evidentiary rule, by its own terms, violated a

14  defendant's right to present evidence, and found that AEDPA does not permit a federal habeas

15  court to conclude that a state court's discretionary exclusion of evidence pursuant to a valid

16  evidentiary rule violated clearly established Supreme Court precedent.  Moses, 555 F.3d at 756–

17  60; Horell, 644 F.3d at 983.

18          Subsequently, the Supreme Court held that its precedent did not clearly establish that the

19  Constitution "requires a case-by-case balancing of interests" before a state rule precluding the

20  admission of extrinsic evidence to impeach a witness could be enforced.  The Court held that it

21  "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic

22  evidence for impeachment purposes."  Jackson, 569 U.S. at 509-11 (exclusion of evidence under

23  state law for the purpose of focusing the fact-finder and conserving judicial resources was

24  appropriate and did not impinge on a defendant's right to present a complete defense.).

25          The Ninth Circuit has noted that "under AEDPA, 'even clearly erroneous' evidentiary

26  errors 'that render a trial fundamentally unfair may not permit the grant of federal habeas corpus

27  relief if not forbidden by 'clearly established federal law,' as laid out by the Supreme Court.'"

28  Hale v. Cate, 530 F. App'x 636, 637 (9th Cir. 2013) (quoting Holley v. Yarborough, 568 F.3d

14

1091, 1101 (9th Cir. 2009). <u>Moses</u> only addressed the exclusion of expert testimony under a Washington state statute. However, both the Ninth Circuit and district courts in this circuit have extended the holding in <u>Moses</u> to preclude habeas claims arguing that exclusion of other, non-expert evidence by state courts was contrary to, or an unreasonable application of, controlling Supreme Court precedent, or warranted habeas relief under AEDPA. <u>See, e.g.</u>, <u>Smith v. Small</u>, 697 F. App'x 538 (9th Cir. 2017) (California court's decision to exclude defense witness testimony was not contrary to or an unreasonable application of clearly established Supreme Court precedent); <u>Borges v. Davey</u>, 656 F. App'x 303, 304 (9th Cir. 2016) (California court's exclusion of proposed cross-examination pursuant to Cal. Evid. Code § 352 because questioning would be cumulative and time-consuming did not warrant habeas relief under AEDPA); <u>Dugger v. Brown</u>, 469 F. App'x 534 (9th Cir. 2012) (Supreme Court has established no controlling legal standards to evaluate a state court's decision to preclude defense impeachment testimony under Cal. Evid. Code § 352); <u>see also</u> <u>Gentry v. Grounds</u>, No. 2:13-cv-0142 WBS KJN P, 2015 WL 3733395, at *10 (E.D. Cal. June 11, 2015) (state court's decision to exclude defense impeachment evidence under Cal. Evid. Code § 352 did not violate any clearly established federal law under § 2254(d)), <u>rep. and reco. adopted</u>, No. 2:13-cv-0142 WBS KJN P (E.D. Cal. July 10, 2015); <u>Chein v. Powers</u>, No. CV 13-0126 ABC (AN), 2013 WL 6535301, at *10 (C.D. Cal. Dec.13, 2013) (state trial court's exclusion of proposed defense evidence regarding conduct of victim because it was irrelevant did not warrant habeas relief under AEDPA); <u>White v. Knipp</u>, No. 2:11-cv-3016 TLN DAD P, 2013 WL 5375611, at *19 (E.D. Cal. Sept. 24, 2013) (state court's exclusion of third party culpability evidence did not warrant relief under AEDPA), <u>rep. and reco. adopted</u>, No. 2:11-cv-3016 TLN DAD P (E.D. Cal. Nov. 18, 2013).

**B. State Court Decision**

### Exclusion of Impeachment Evidence

> Defendant also claims the trial court abused its discretion and his right to due process by excluding evidence [of] certain school records pertaining to S.S. [which] indicated he exhibited oppositional, defiant, and atypical behaviors purportedly relevant to his credibility as a witness. We disagree.

# A.

## Additional Background

Defendant subpoenaed S.S.'s school records that the trial court reviewed in camera. Certain of these records were made available to defense counsel. The prosecution then asked the trial court to limit cross-examination of S.S. concerning a psychoeducational study (PS) prepared in May 2011. The prosecution asked the trial court to preclude , as "irrelevant and unduly prejudicial," any questioning concerning the following contents of the study: "[R]eferrals for '[in]subordinate and defiant behavior; [¶] Anger outburst when frustrated over academics or social injustices; [¶] Demonstrating victimizing behaviors; [¶] Seizures, setting fires, and thoughts of suicide; [¶] Prior diagnoses and use of medication to control behavior; [¶] Conclusions based on limited hearsay that suggest potential for maladjustment including: cruelty to animals, threats to hurt others . . , bullying classmates, and other aggression and conduct problems." The prosecution did not, however, object to cross-examination concerning two reported incidents of theft at school and requested a hearing under Evidence Code section 402 to determine whether a reported statement made by S.S. to the school psychologist, i.e., that he sometimes heard voices in his head that no one else could hear, would be relevant to his perception of defendant's behavior on August 2, 2011.

Prior to defense counsel's cross-examination of C.C., the first witness called by the prosecution, defense counsel raised the issue of addressing the foregoing subjects with this witness. The trial court ruled that S.S.'s "oppositional, defiant behavior at school that is reflected in the [PS] doesn't seem to me to have any bearing on his truth or veracity." The court also ruled such evidence inadmissible under Evidence Code section 352 as an "unduly prejudicial" attack on S.S.'s character. The trial court did, however, indicate that defense counsel might be able to cross-examine S.S. concerning "his self-report of hearing things that might not be there" and the "specific incidents of . . .theft."

During S.S.'s testimony, defense counsel again raised the issue of questioning him concerning his oppositional and defiant behavior at school. Defense counsel argued: "I suspect [defendant] is going to get on the stand, deny that any of this happened, absolutely deny it. And so, ultimately, I have got to come up with a theory for the jury as to why these children would make up allegations against their babysitter who they had no problems with in the past. [¶] And certainly seems to me with [S.S.], who is the oldest of the children and the only one that's allowed to leave the property on a bicycle – the rest of the children weren't – it seems to me I should be able to ask that, if the response is merited, about the fact he was defiant to authority and didn't like to listen to other people, especially people in position[s] of authority." The trial court again ruled the evidence inadmissible to the question of "whether this witness is telling the truth or not" and also barred by Evidence Code section 352.

16

S.S. was then questioned about the two reported thefts. He admitted one of them. He was also questioned about his reported statement that he was hearing voices no one else could hear. He denied making this statement. The parties stipulated the school psychologist would testify that S.S. made the statement.

**B.**

**Analysis**

Defendant asserts the jury should have heard that S.S. "'had numerous referrals and suspensions for [in]subordinate and defiant behavior'" at school, a teacher noted he "will have anger outbursts when he becomes frustrated over academics or social injustice[,] struggles on the yard and in small group situations[,] and he often demonstrates victimizing behaviors,'" his "' primary disability is Emotional Disturbance'" he was "identified as showing 'Oppositional Defiant Disorder and Bipolar Disorder,'" his mother was "' recently having more difficulty helping [him] control his behavior,'" he had been "' receiving therapy for one month. . . but [was] not presently taking medication,'" "parent and teacher responses suggested 'a high level of maladjustment for . . . aggression' [and] that he 'often threatens to hurt other and bullies others,'" and parent and teacher responses also suggested "' a high level of maladjustment for. . . atypicality (seems out of touch with reality, has strange ideas, says things that make no sense, acts strangely, seems unaware of others).'" He argues the foregoing evidence "was highly relevant to the jury's assessment of whether his report of what he saw in the bedroom was one of his 'strange actions'—a product perhaps of his anger, defiance, or lack of contact with reality." We are not persuaded.

We first note the foregoing evidence falls into two categories: (1) evidence of S.S.'s past misconduct, i.e., insubordinate, oppositional, defiant, aggressive, threatening, and victimizing behavior; and (2) evidence S.S. appeared to be out of touch with reality. With respect to the second category, aside from the report of S.S. hearing voices no one else could hear, which was admitted into evidence, defense counsel did not ask the trial court to admit this evidence. Accordingly, any claim of error based on this category is forfeited.[fn 6]  (Evid. Code, § 354, subd. (a); see, e.g., *People v Panah* (2005) 35 Cal.4th 395, 481.) We therefore address only the first category.

**1. Relevance of the Proffered Evidence**

"No evidence is admissible except relevant evidence" and, "except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, §§ 350, 351.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

"Not all past misconduct has a 'tendency in reason to prove or disprove a witness's honesty and veracity." (*People v. Wheeler*

(1992) 4 Cal. 4th 284, 295.) it is misconduct "involving moral turpitude" that "may suggest a willingness to lie [citations], and this inference is not limited to conduct which resulted in a felony conviction." (*Id.* at pp. 295-296.) Thus, "the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude." (*Id.* at p. 296; see also *People v. Clark* (2011) 52 Cal.4th 856, 931.)

Here, based on the offer of proof, we cannot conclude S.S.'s prior conduct rises to the level of moral turpitude, i.e., a " 'general readiness to do evil.'" (*People v. Castro* (1985) 38 Cal. 3d 301, 315.) While the assessment indicates S.S. "threatens to hurt others, teases others, argues [w]hen denied own way, bullies others, seeks revenge, hits and calls other adolescents names," we do not know precisely what S.S. did to warrant these comments. However, arguing, teasing, and name-calling certainly do not rise to the level of moral turpitude. Nor does committing a battery. (See *People v. Mansfield* (1988) 200 Cal.App.3d 82, 89.) Moreover, while the crimes of making a criminal threat (§ 422) and arson (§ 451) have been held to involve moral turpitude (see *People v. Thornton* (1992) 3 Cal.App.4th 419, 424; *People v. Miles* (1985) 172 Cal.App.3d 474, 482), S. S. was not convicted of these crimes. Instead, the school assessment simply notes, based on parent and teacher responses, that S.S. "threatens to hurt others." This does not reveal "[t]he knowing infliction of mental terror" held to be "deserving of moral condemnation" in *People v Thornton, supra*, 3 Cal.App.4th at page 424. Similarly, the parent response that S.S. "sets fires" does not reveal whether he set fire to "any structure, forest land, or property," as those terms are used in the arson statute, or whether he did so "willfully and maliciously." (§ 451.) At most, the school assessment reveals a troubled young man who was acting out in school and at home, not a person possessing a general readiness to do evil, such that the jury could reasonably infer a willingness to lie. We agree with the trial court that his evidence was not relevant to S.S.'s credibility as a witness.

**2. Evidence Code Section 352**

Even assuming the evidence was relevant to S.S.'s credibility, we would nevertheless conclude the evidence was properly excluded under Evidence Code section 352. This section provides the trial court with discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We review the trial court's decision to exclude evidence under Evidence Code section 352 for abuse of discretion. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1070.) However, while this provision "permits the trial judge to strike a careful balance between the probative value of the evidence and the danger of prejudice, confusion and undue time consumption," it also "requires that the danger of these evils substantially outweigh the probative value of the evidence. This balance is particularly delicate and critical where what is at stake is a criminal defendant's liberty." (*People v.*

*Lavergne* (1971) 4 Cal.3d 735, 744; see *People v. Holford* (2012) 203 Cal.App.4th 155, 168 [section 352 objection should be overruled "unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' ' of one of the statutory counterweights].) Thus, Evidence Code section 352 "must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense. [Citations.] Of course, the proffered evidence must have more than slight relevancy to the issues presented. [Citation.]" (*People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, 599.)

We have already concluded the proffered evidence was not relevant to the issues presented. However, even if relevant, the probative value was slight. In *People v. Lightsey* (2012) 54 Cal.4th 668, our Supreme Court upheld the trial court's decision, under Evidence Code section 352, to exclude evidence of a prosecution witness's misdemeanor conviction for assault with a deadly weapon, explaining: "[E]vidence of [the witness's] misdemeanor conduct-striking her ex-husband with a rock during a dispute-does not strongly demonstrate moral turpitude, i.e., a "'general readiness to do evil'' [citation], and thus would not have provided the jury much assistance in assessing [her] credibility. 'This was a routine matter of weighing the evidence's probative value against the probability its admission would "necessitate undue consumption of time" [citation], and the trial court's ruling was both reasoned and reasonable.' [Citation.]" (*Id.* at p. 714.) The same reasoning applies here.

The trial court did not abuse its discretion or violate defendant's right to due process by excluding the proffered evidence.

[fn 6] In any event, even if properly preserved for review, while evidence S.S. seemed out of touch with reality about three months before defendant tried to have sex with his sister would be relevant to his ability to perceive the even (see Evid. Code, §§ 210, 780), and further assuming the evidence was not subject to exclusion as inadmissible hearsay or under Evidence Code section 352, we would nevertheless conclude any error was harmless since the jury heard evidence S.S. reported hearing voices no one else could hear. This additional, non-specific, evidence that parent and teacher responses revealed S.S. seemed out of touch with reality, had strange ideas, said strange things, acted strangely, and seemed unaware of others would have added little to the jury's assessment of his ability to perceive the event that occurred on his bed. Moreover, the evidence against defendant was overwhelming. Indeed, defendant's admission to trying to have sex with D.C. on the bed corroborated S.S.'s testimony and confirmed he accurately perceived the event.

(LD 4 at 16-22 (some footnotes omitted).[3])

---

[3] The Court of Appeal published only the analysis of claim 1. It did not certify for publication its analyses of petitioner's other claims. See Sanchez, 246 Cal. App. 4th at 179 n. *

1          **C.  Analysis of Claim 2 – Exclusion of Impeachment Evidence**

2          As described above, there is no clearly established federal law that a state court's

3    application of California Evidence Code § 352 may violate due process.  See Smith, 697 F. App'x

4    538; Borges, 656 F. App'x 303; Dugger, 469 F. App'x 534.  Petitioner attempts to argue that

5    because the Court of Appeal misapplied state evidentiary rules, "application of state law in this

6    case is no bar to federal review of petitioner's confrontation claim."  Petitioner's argument is

7    nonsensical in the habeas context.  Whether state law was violated is not a relevant question

8    before this court.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (violation of state law is not

9    cognizable on federal habeas).  Rather, the first question under the § 2254(d) analysis is whether

10   petitioner asserts a claim supported by clearly established federal law as decided by the Supreme

11   Court.  The authorities binding this court are clear that he does not.

12         Even if this court could consider a claim that the limitation on impeachment evidence

13   rendered petitioner's trial fundamentally unfair, that claim would fail.  The evidence against

14   petitioner was overwhelming and the trial court did permit S.S. to be impeached with questions

15   regarding two reported thefts and his statement to a school psychologist that S.S. told her he

16   heard voices no one else could hear.  In addition, the parties stipulated that if the school

17   psychologist testified, she would confirm that statement.

18         In particular, the evidence that S.S. may have heard voices provided the defense with a

19   good basis to impeach his ability to perceive and report petitioner's abuse of D.C. and M.C.

20   Petitioner fails to show that any additional impeachment of S.S. with evidence of his oppositional

21   behavior and challenges to authority would have affected the jury's determination of petitioner's

22   guilt.  Petitioner's claim 2 should fail.

23   **III.  Claim 3 – Prosecutorial Misconduct/Ineffective Assistance of Counsel**

24         Petitioner raises the following claims of prosecutorial misconduct.  Petitioner alleges the

25   prosecutor:  (1) misled the jury regarding D.C.'s injuries; (2) disparaged defense counsel; (3)

26   indicated that she knew evidence not before the jury; (4) mispresented the parties' stipulation and

27   urged the jury to speculate about evidence not in the record; and (5) asked the jury to sanction

28   petitioner for exercising his right to trial.  What petitioner fails to point out in his petition, and

                                          20

1   respondent fails to argue, is that petitioner defaulted these prosecutorial misconduct claims

2   because none of the instances of alleged misconduct were objected to at trial.  The Court of

3   Appeal noted the default and analyzed the claims under petitioner's fall-back argument that the

4   failure of counsel to object violated petitioner's Sixth Amendment rights to the effective

5   assistance of counsel.  (See LD 4 at 28.)

6        This court must decline to consider a claim that has been defaulted for failure to

7   contemporaneously object.  See Fairbank v. Ayers, 650 F.3d 1243, 1256-57 (9th Cir. 2011)

8   (finding that California's contemporaneous objection rule was independent and adequate to bar

9   federal review when a defense attorney failed to object to alleged prosecutorial misconduct).

10  Accordingly, as the state court did, this court considers petitioner's claims that his trial counsel

11  was ineffective for failing to object to the five instances of prosecutorial misconduct set out

12  above.[4]

13       **A.  Applicable Legal Principles**

14       To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1)

15  his counsel's performance was deficient and that (2) the "deficient performance prejudiced the

16  defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel is constitutionally

17  deficient if his or her representation "fell below an objective standard of reasonableness" such

18  that it was outside "the range of competence demanded of attorneys in criminal cases."  Id. at

19  687-88 (internal quotation marks omitted).  Prejudice is found where "there is a reasonable

20  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

21  been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine

22  confidence in the outcome." Id.  "The likelihood of a different result must be substantial, not just

23  conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

24  _____

25  [4] Petitioner appears to raise the ineffective assistance of counsel claims only in his reply.  (See
    ECF No. 24 at 31-31.)  Generally, this court may not consider claims raised for the first time in a

26  reply.  See Lopez v. Dexter, 375 F. App'x 724 (9th Cir. 2010) (district court appropriately
    rejected claim that "surfaced for the first time in [the] traverse to the state's answer" (citing

27  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994)).  However, because the ineffective
    assistance of counsel issue was raised, and considered, in the state court, this court will consider it

28  here.

1    A reviewing court "need not determine whether counsel's performance was deficient

2 before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. .

3 . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

4 . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002)

5 (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247

6 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal.

7 Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954), aff'd, 735 F. App'x 290 (9th Cir. 2018).

8    **B.  State Court Decision**

9    The Court of Appeal found petitioner's trial attorney did not act unreasonably when he did

10 not object to the alleged misconduct because the prosecutor's actions did not amount to

11 misconduct and/or they were not prejudicial to petitioner.

12    **Prosecutorial Misconduct**

13    Defendant further asserts the prosecutor engaged in
prejudicial misconduct in violation of his right to due process by (1)

14 misleading the jury about the evidence, (2) misleading the jury about
a stipulation and suggesting facts not in evidence, (3) assuring the

15 jury the case would not have been brought if the evidence was
lacking, (4) implying defendant was not human, except for the

16 moment when he confessed to police, and (5) appealing to the
passions of the jury and disparaging defense counsel in front of the

17 jury. This assertion of error is forfeited because defendant did not
object to the prosecutor's alleged misconduct or request curative

18 admonitions. (*People v. McDowell* (2012) 54 Cal.4th 395, 436.)
Anticipating forfeiture, defendant argues reversal is nevertheless

19 required because defense counsel's failure to object and request
admonitions amounted to ineffective assistance of counsel. We

20 disagree. Because the asserted instances of alleged misconduct were
either not misconduct or not prejudicial, we conclude counsel's

21 failure to object and request admonitions did not fall below an
objective standard of reasonableness.

22

23    A criminal defendant has the right to the assistance of counsel
under both the Sixth Amendment to the United States Constitution

24 and article I, section 15, of the California Constitution. (*People v.
Ledesma* (1987) 43 Cal.3d 171, 215.) This right "entitles the

25 defendant not to some bare assistance but rather to effective
assistance. [Citations.] Specifically, it entitles him [or her] to 'the

26 reasonably competent assistance of an attorney acting as his [or her]
diligent conscientious advocate.' [Citations.]" (*Ibid.*, quoting *United

27 States v. DeCoster* (D.C.Cir. 1973) 487 F.2d 1197, 1202.) "'In order
to demonstrate ineffective assistance of counsel, a defendant must

28 first show counsel's performance was "deficient" because his [ or
her] "representation fell below an objective standard of

22

reasonableness ... under prevailing professional norms." [Citations.] Second, he [or she] must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.""" (*In re Harris* (1993) 5 Cal.4th 813, 832-833; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) The burden of proving a claim of ineffective assistance of counsel is squarely upon the defendant. (*People v. Camden* (1976) 16 Cal.3d 808, 816.)

We must first determine whether defense counsel's failure to object to the specific instances of alleged misconduct fell below an objective standard of reasonableness. "Under the federal Constitution, a prosecutor commits reversible misconduct only if the conduct infects the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" [Citation.] By contrast, our state law requires reversal when a prosecutor uses 'deceptive or reprehensible methods to persuade either the court or the jury' [citation] and "'it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct'" [citation]." (*People v. Davis* (2009) 46 Cal.4th 539, 612.)

(LD 4 at 28-29.)

The Court of Appeal then went on to address each instance in which petitioner alleged his attorney unreasonably failed to object to misconduct. That court's reasoning on each contention is set out in the discussion of petitioner's claims below.

## C. Analysis of Ineffective Assistance of Counsel

### 1. Misstating Evidence re Injury to D.C.

Petitioner argues the prosecutor improperly mischaracterized the evidence by describing an interviewer's question of petitioner as asking whether anything went "into her vagina that we need to know about when her hymen broke?" (2 RT 993.) Petitioner contends there was no evidence D.C.'s hymen was ruptured as a result of any action by petitioner and the statement was prejudicial.

The question before this court is whether the Court of Appeal reasonably held that petitioner's trial attorney acted appropriately when he failed to object to this argument. As the Court of Appeal points out, counsel's reasonableness would have been based on a consideration of whether the prosecutor's actions would have been found by the state court to amount to

1    prejudicial misconduct.  That inquiry is not limited to federal law.  If the prosecutor's actions

2    would have been considered prejudicial misconduct under state law, then petitioner's trial

3    attorney acted unreasonably in failing to object to them.  In recounting the standards for

4    determining prosecutorial misconduct under both federal and state law, the Court of Appeal

5    shows that the state law standards are more lenient.  In other words, proving prejudicial

6    prosecutorial misconduct would have been easier under state, rather than federal, standards.

7    Accordingly, those state standards must be considered by this court as well.  The prosecutor thus

8    committed objectionable misconduct under state law if she used "'deceptive or reprehensible

9    methods to persuade either the court or the jury' [citation] and "'it is reasonably probable that a

10   result more favorable to the defendant would have been reached without the misconduct'"

11   [citation].'""  (LD 4 at 29 (citing <u>People v. Davis</u> (2009) 46 Cal.4th 539, 612).

12          The Court of Appeal rejected petitioner's claim by finding the prosecutor's argument did

13   not, in fact, misstate the evidence.  Therefore, any objection by counsel would have been futile.

14   > The first instance of alleged misconduct occurred during the
15   > prosecutor's closing argument.  Describing defendant's interview
16   > with police, the prosecutor stated: "This is when the officers are
     > saying, [D.C.] is going to get examined; did you give her any STDs.
     > Did anything go into her vagina that we need to know about *when*
16   > *her hymen broke?*  They explained that to him."  (Italics added.)
     > Defendant complains the prosecutor misled the jury about the
17   > evidence because there was no evidence D.C.'s hymen broke.  While
     > "mischaracterizing the evidence is misconduct" (*People v. Hill*
18   > (1998) 17 Cal.4th 800, 823), where the prosecutor's comments are
     > ambiguous, the question is "whether there is a reasonable likelihood
19   > that the jury misconstrued or misapplied" the comments. (*People v.*
     > *Clair* (1992) 2 Cal.4th 629, 663.)  Here, "when her hymen broke"
20   > could be construed to indicate it did actually break, while the doctor
     > who performed the sexual assault examination on D.C. testified there
21   > were no findings of sexual trauma.  However, the prosecutor was
     > clearly referring to defendant's police interview, in which defendant
22   > was asked whether he penetrated D.C.'s vagina "however slight,"
     > because any such penetration "breaks the hymen."  Viewed in
23   > context, we conclude the jury likely understood the challenged
     > language to refer to the detective's suggestion to defendant that
24   > D.C.'s hymen broke, and not that the hymen was in fact perforated.
     > So viewed, the challenged statement did not mischaracterize the
25   > evidence and defense counsel was not ineffective for failing to
     > object.
26

27   (LD 4 at 29-30.)

28   ////

24

Petitioner contends the prosecutor's statement, simply read, asserted that D.C.'s hymen had been ruptured.  Petitioner argues that such a statement was a mischaracterization of the evidence that would have been extremely prejudicial.

This court agrees with the Court of Appeal that the statement, while certainly not well said, did not amount to misconduct.  The prosecutor was recounting the interviewer's testimony that he told petitioner D.C. was going to be examined and asked whether petitioner gave her any STDs or whether anything went into her vagina that could have ruptured her hymen.  While not identical to the testimony, the jury would not have been misled.  Moreover, even if misconduct, the statement was not prejudicial.  There was medical testimony that doctors found no evidence of sexual trauma.  And, the jury was reminded in the defense closing argument that there was "not one sign of sexual abuse or trauma." (2 RT 1023.)  Finally, the jury was instructed that "[n]othing that the attorneys say is evidence." (2 RT 946.)  Petitioner fails to show his trial counsel acted unreasonably in failing to object to the prosecutor's argument or that the absence of an objection prejudiced him.

### 2. Disparaging Defense Counsel

Petitioner argues the prosecutor disparaged defense counsel numerous times when she questioned the victims and accused counsel of going "on the attack" in his questioning of those victims and their families.

The Court of Appeal held that the prosecutor's comments did amount to misconduct.  It further held, however, that there was no reasonable probability counsel's failure to object affected the verdict.

> [D]efendant asserts the prosecutor committed misconduct by appealing to the passions of the jury and disparaging defense counsel. The prosecutor stated during her rebuttal argument: "Can you imagine what that must feel like, to be an eight-year-old kid, with 12 adults -- 14 staring at her; and the most important person in her life on August 2, 2011, looking right at her. But, yet, [defense counsel], with his many years of experience, was able to twist her up. And how hard is that, to twist up an eight-year-old girl to the point where she is crumpled in her seat, unable to even talk about anything?" Additionally, defendant complains the prosecutor asked M.C. "how she felt there on the stand" and whether defense counsel's questions about her body made her "feel embarrassed," stated in her closing argument that the SAFE interview is different from trial, "where you

have an experienced defense attorney doing leading questions and getting answers that they want out of a kid who is oftentimes trained to obey adults," and stated in her closing and rebuttal arguments that defense counsel went "on the attack" in cross-examining the children and also "attacked" their parents and the police. It is improper for a prosecutor "to portray defense counsel as the villain in the case"; this is because a "defendant's conviction should rest on the evidence, not on derelictions of his [or her] counsel. [Citations.] Casting uncalled for aspersions on defense counsel directs attention to largely irrelevant matters and does not constitute comment on the evidence or argument as to inferences to be drawn therefrom." (*People v. Thompson* (1988) 45 Cal.3d 86, 112.) In *People v. Turner* (1983) 145 Cal.App.3d 658, disapproved on other grounds in *People v. Newman* (1999) 21 Cal.4th 413, 422-423, footnote 6, and *People v. Majors* (1998) 18 Cal.4th 385, 410-411, the Court of Appeal held the prosecutor "overreacted" to defense counsel's cross-examination of the victim and engaged in misconduct by portraying defense counsel as "an additional villain who was attacking the victim." (*Turner*, supra, 145 Cal.App.3d at p. 674.) The same can be said of the prosecutor's argument here. However, as in *Turner*, we conclude the misconduct was harmless. (*Ibid.*) In light of the overwhelming evidence of defendant's guilt, there is no reasonable probability a result more favorable to the defendant would have been reached without the misconduct. (See *People v. Davis, supra*, 46 Cal.4th at p. 612.) For the same reason, even if we were to conclude defense counsel's failure to object to the foregoing statements fell below an objective standard of reasonableness, there would be no prejudice.

(LD 4 at 34-35.)

While petitioner argues the prosecutor's statements were misconduct, and there appears to be no dispute that they were, petitioner makes no real attempt to argue the statements were prejudicial. This court finds they were not. Those statements were not specifically focused on the evidence and this court finds no basis to conclude, based on the substantial evidence of petitioner's guilt, including his admissions, that had counsel objected to those statements, there is a reasonable probability the result of the proceeding would have been different. The Court of Appeal's decision was not contrary to or an unreasonable application of clearly established federal law and does not rest on an unreasonable determination of the facts.

### 3. Vouching

Petitioner argues that the prosecutor's assertion that she would not be arguing to the jury if she thought the evidence was insufficient to convict him amounts to improper vouching. A prosecutor's expression of a personal opinion of the guilt of the accused can "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the

charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." United States v. Young, 470 U.S. 1, 18-19 (1985) (citing Berger v. United States, 295 U.S., 78, 88-89 (1935)).

The California Court of Appeal rejected petitioner's contention that the prosecutor's comment amounted to vouching:

> [D]efendant complains the prosecutor stated during her rebuttal argument: "No evidence at all? I promise you, I would not be arguing in front of you that there was." Defendant argues: "The prosecutor's statement that she would not be arguing to the jury if she did not have sufficient evidence invites the jury to rely on the prosecutor's personal probity rather than on the evidence in the case and may be understood by the jury as an assurance that the prosecutor is relying on additional evidence." A prosecutor may not "express a personal opinion or belief in a defendant's guilt, where there is substantial danger that jurors will interpret this as being based on information at the prosecutor's command, other than the evidence adduced at trial. The danger is acute when the prosecutor offer his [or her] opinion and does not explicitly state that it is based solely on the inferences from the evidence at trial." (*People v. Bain* (1971) 5 Cal.3d 839, 848.) However, viewing in context, we cannot agree with defendant's characterization of the challenged statement as an assurance to the jury that there is sufficient evidence, perhaps outside that adduced at trial, to support defendant's guilty. The challenged statement was made in response to defense counsel's argument there was not evidence of sexual penetration, or that a piggyback ride took place. The prosecutor responded: "[W]hat are you expecting? A picture of the piggy-back ride? [¶] I – at this point, you have the defendant's statement, and you have [the doctor's] exam; and, ladies and gentlemen, you need evidence that a crime occurred, however slight that evidence is. You got -- you'll get the instructions in the deliberation room. You have a lot of evidence that a crime occurred: Touching breasts, touching butt, touching vagina, being in a room with [D.C.], [S.S.] seeing him on top of her .... No evidence at all? I promise you, I would not be arguing in front of you that there was." Viewed in context, we conclude the jury likely understood the challenged statement to refer to the evidence the prosecutor recited immediately before the statement. So viewed, there was no misconduct and defense counsel was not ineffective for failing to object.

(LD 4 at 32-33.)

Read in context, the prosecutor's argument did not imply the prosecutor had knowledge of evidence not presented to the jury. Rather, the statement was made as part of a summary of that evidence and was made in direct response to argument by the defense. It was not misconduct and petitioner's trial counsel did not act unreasonably in failing to object to it.

1

### 4. Misstating Evidence re Parties' Stipulation

2        Petitioner next contends that, despite stipulating to the testimony of a school psychologist

3   regarding a statement made to her by S.S., the prosecutor argued in closing that some of the

4   psychologist's testimony, had the jury heard it, would have been false and implied that the

5   prosecutor could have adduced different testimony upon cross-examination.

6        The Court of Appeal found the prosecutor's argument was not misconduct and, to the

7   extent the prosecutor made one comment that could be construed as referring to a fact not in

8   evidence, that comment was not so prejudicial that there was a reasonable probability the result of

9   trial would have been different if counsel had objected.

10              [D]efendant claims the prosecutor misled the jury about the
        stipulation entered into between the parties, i.e., the school
11      psychologist would testify S.S. told her on one occasion in May 2011
        that "sometimes he heard voices in his head that no one else could
12      hear." The prosecutor stated during her closing argument: "[S.S.]
        told –allegedly told a school psychologist -- a school counselor that
13      he heard things that no one else could hear. And, first of all, there is
        a stipulation that, if she were to take the stand, she would have said
14      that. But you can't just assume that it is true just because she would
        say that. She was not subject to cross-examination. She did not give
15      you the context under which that statement was said. She didn't tell
        you any of the good things that possibly she knows about him either.
16      The fact that that fact was given -- that she would testify to that single
        fact in isolation doesn't tell you have to believe it. It is just a fact that
17      you can consider [of a statement] that he made in 2011."

18              Defendant argues the prosecutor "implied to the jury that
        defense counsel was preventing cross-examination and the elicitation
19      of testimony helpful to the prosecution" and "suggested there were
        facts not in evidence, favorable to the prosecution, to which the
20      absent witness would have testified." We disagree. A prosecutor
        "should not, of course, argue facts not in evidence" (*People v.
21      Osband* (1996) 13 Cal.4th 622; 698), and "[w]here the circumstances
        do not indicate suppression of material evidence or any other
22      impropriety in failing to call a witness, it may be misconduct for the
        prosecutor ... to assert that a particular person, if called, would give
23      certain testimony." (5 Witkin, Cal. Criminal Law (4th ed. 2012)
        Criminal Trial, § 762, p. 1186.) Here, however, the prosecutor
24      informed the jury that, while the stipulation created a conflict in the
        evidence as to whether S.S. told the school psychologist he heard
25      voices no one else could hear, the stipulation did not resolve that
        conflict. If called as a witness, the psychologist would have testified
26      S.S. made the statement; S.S. testified he did not. The parties did not
        stipulate that the psychologist's testimony would have been true. It
27      was for the jury to decide who was (or would have been) telling the
        truth. Pointing this out to the jury was not misconduct. Nor was the
28      prosecutor's subsequent comment that the stipulation provided

28

1

2

3

4

5

> limited information from which the jury could assess the psychologist's credibility. The only arguable suggestion of facts not in evidence was the comment that the psychologist might "possibly" know "good things" about S.S. But anyone might possibly know good things about anyone. This statement does not assert the psychologist actually had good things to say about S.S., or defendant somehow prevented her from sharing these good things with the jury. Defense counsel was not ineffective for failing to object to these comments.

6  (LD 4 at 30-31.)

7       This court agrees that the prosecutor statements did not amount to misconduct. The

8  parties stipulated to the substance of the psychologist's testimony but did not stipulate that the

9  testimony was necessarily true. Further, to the extent the prosecutor's argument called for

10  speculation that the psychologist might "possibly" know some good things about S.S., that

11  suggestion was brief and did not imply the prosecutor was aware of evidence not before the jury.

12  Petitioner fails to show counsel's failure to object to this argument was unreasonable under

13  Strickland.

14  ### 5. Denigration of Petitioner's Decision to go to Trial

15       In the final instance of alleged prosecutorial misconduct, petitioner argues that the

16  prosecutor's statement that petitioner was "human" when he accepted responsibility for his

17  actions implied that he was inhuman in disputing his crimes and going to trial.

18       The Court of Appeal found petitioner's claim simply a mischaracterization of the

19  prosecutor's statements.

20

21

22

23

24

25

26

27

28

> [D]efendant takes issue with the following statement made during the prosecutor's closing argument, again referring to defendant's police interview: "And for a moment, the defendant becomes a human, and he starts to talk and gives this information up." Defendant argues: "By suggesting that [defendant] was human only for a moment, when he responded with admissions of wrongdoing to the officers' expressions of concern for the family, the prosecutor implied that [defendant] has behaved inhumanly since then. The prosecutor implied that, after that fleeting moment of humanity, [defendant] reprehensibly reverted to inhumanity by denying the truth of his admissions and demanding a trial, and thus implicitly invited the jury to chastise [defendant's] presumptuousness in demanding a trial. The argument thus infringed on [defendant's] constitutional trial right." The foregoing quote, with a single citation to the Sixth Amendment to the federal Constitution, is the entirety of defendant's argument. It is insufficient to raise the issue. (See In re S.C. (2006) 138 Cal.App.4th 396, 408 [appellate

29

1

2

> brief must contain "meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].)

3

4

5

6

7

8

9

10

11

> In any event, we disagree with defendant's characterization of the prosecutor's argument. No reasonable juror would have taken it as an invitation to hold defendant's decision to demand a trial against him. Moreover, while stating defendant was human only when he confessed does imply he was otherwise inhuman, we do not view this as misconduct. "Argument may be vigorous and may include opprobrious epithets reasonably warranted by the evidence. [Citations.]" (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1030; see also *People v. Terry* (1962) 57 Cal.2d 538, 561-562 [reference to the defendant as an "animal"]; *People v. Jones* (1970) 7 Cal.App.3d 358,362 [reference to the defendant's "animalistic tendencies"].) Merriam-Webster defines "inhuman" to mean "lacking pity, kindness, or mercy." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 643, col. 2.) Defendant's crimes against D.C. and M.C. certainly qualify. We therefore conclude the prosecutor's comments were warranted by the evidence and amounted to vigorous but fair argument. Defense counsel was not ineffective for failing to object.

12

(LD 4 at 33-34.)

13

14

15

Petitioner's claim has no basis in the facts. The prosecutor's argument did not compel or even suggest that petitioner's behavior in going to trial was "inhuman." Petitioner presents no basis to conclude his attorney's failure to object to this statement was unreasonable.

16

17

18

19

20

21

22

Finally, petitioner's contention that the cumulative effect of the prosecutorial misconduct prejudiced him is baseless. First, this court considers here petitioner's claim of ineffective assistance of counsel, not prosecutorial misconduct. Second, this court finds only the prosecutor's disparagement of defense counsel to have amounted to misconduct of any weight. And, as described above, given the significant evidence of petitioner's guilt presented at trial, even had petitioner's trial attorney objected to those statements, it cannot be said that there is a reasonable probability the result of the proceeding would have been different.

23

**IV. Admission of Evidence of Child Sexual Abuse Accommodation Syndrome**

24

25

26

27

28

At trial, an expert, Dr. Anthony Urquiza, testified about Child Sexual Abuse Accommodation Syndrome ("CSAAS"). The jury was told he had not examined the victims and was testifying generally to common responses of child victims of sexual abuse. Petitioner argues that California law permits expert testimony about CSAAS only for the purpose of rehabilitating a victim's credibility. According to petitioner, that was not the case here.

Petitioner argues strenuously that the admission of the CSAAS evidence violated state law. He cites few federal cases and in none of those cases did the Supreme Court hold that the Constitution limits general expert testimony about the conduct of sex abuse victims to only that testimony necessary to rehabilitate a victim's credibility.

First, petitioner cites to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Any argument based on Daubert is unavailing. The Court held in Daubert that Federal Rule of Evidence 702 requires district judges to be gatekeepers for proposed scientific evidence by assuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Accordingly, an expert's testimony must be based on scientific knowledge that is grounded "in the methods and procedures of science," and consists of more than just "subjective belief or unsupported speculation." Id. at 590–91. Daubert states a non-constitutional evidentiary rule that applies in the federal trial courts. See Kumho Tires Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) ("In Daubert, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony...is not only relevant, but reliable.'" (citations omitted)); see also Wilson v. Sirmons, 536 F.3d 1064, 1101-02 (10th Cir. 2008) ("Daubert does not set any specific constitutional floor on the admissibility of scientific evidence."). As such, "Daubert does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution." Kinder v. Bowersox, 272 F.3d 532, 545 n.9 (8th Cir. 2001). Accordingly, Daubert provides no basis for habeas relief.

Second, petitioner invokes the Confrontation Clause. He argues that the expert testimony "advised the jury" to disregard ambiguities and inconsistencies in the victims' testimony, thereby limiting his right to confront those witnesses. Petitioner fails to state any plausible claim that his confrontation rights were violated. The defense had the ability to fully cross-examine Dr. Urquiza and the victims. Moreover, Dr. Urquiza did not testify about the reactions of the specific victims in this case. Petitioner's Confrontation Clause argument is baseless.

While, as discussed above, state court evidentiary rulings are generally considered to fall outside the scope of habeas, there is some case law indicating that the admission of "flawed

expert testimony" can amount to a due process violation where the introduction of that evidence "undermined the fundamental fairness of the entire trial."[5]  Giminez v. Ochoa, 821 F.3d 1136, 1145 (9th Cir. 2016) (quoting Lee v. Houtzdale SCI, 798 F.3d 159, 162 (3d Cir. 2015)).  On the basis that petitioner may arguably state a federal claim, this court considers whether the California Court of Appeal's rejection of this claim was unreasonable under § 2254(d).

The California Court of Appeal thoroughly examined the state law issues.  It concluded that Dr. Urquiza testified consistent with state law principles that limit the testimony of an expert on child sexual abuse.  Those principles, as established by the California Supreme Court, are that:

> "[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident----e.g., a delay in reporting-is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'"

(LD 4 at 22 (quoting People v. McAlpin 53 Cal.3d 1289, 1300-01 (1991)).  Dr. Urquiza's testimony explained the five stages of CSAAS: "(1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed and unconvincing disclosure; and (5) retraction or recantation." (LD 4 at 22.)  The court noted that Urquiza testified that "he was not there to render an opinion as to whether or not the alleged victims in this case were sexually abused."  He explained that CSAAS is "an educational tool for therapists" and "often is used to educate jurors about sexual abuse and to dispel myths or misunderstandings that they may have about sexual abuse."  (Id.)

////

---

[5] The Court of Appeals made this statement in Giminez in the context of considering whether Mr. Giminez should be permitted to seek habeas relief for a second time.  New evidence had come to light which contradicted the prosecution's scientific evidence introduced at trial.  The Court held that "habeas petitioners can allege a constitutional violation from the introduction of flawed expert testimony at trial if they show that the introduction of this evidence undermined the fundamental fairness of the entire trial.  821 F.3d at 1145 (internal citations and quotation marks omitted).  It appears to be limited to a showing that the prosecution's forensic evidence was scientifically flawed.  That is not the case here.  Nonetheless, this court considers the fundamental fairness issue out of an abundance of caution.

The evidence was appropriate, the Court of Appeal held, because it was used to counter suggestions that the victims' conduct and statements were inconsistent with having been sexually abused.  With respect to petitioner's arguments that Dr. Urquiza's testimony violated petitioner's due process rights.  The court simply noted that "[s]imilar arguments were raised and rejected in *People v. Patino* (1994) 26 Cal.App.4th 1737, at pages 1746-1747.  We agree with that decision." (LD 4 at 22.)  In Patino, the court held that the "[a]ppellant has failed to demonstrate how his fundamental right to a fair trial was violated by the introduction of CSAAS testimony to rehabilitate [the victim's] testimony after a rigorous defense cross-examination calling into question the victim's credibility."

This court similarly finds no basis to conclude that petitioner's right to a fair trial was fundamentally undermined by the testimony of Dr. Urquiza.  The jury was repeatedly told, through testimony and questioning, that Dr. Urquiza was not rendering an opinion on the truthfulness of the victim witnesses or on the underlying issue of petitioner's guilt.  Petitioner makes no showing that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.

**V. Cumulative Error**

The Court of Appeal simply held that because it had "rejected each of defendant's assertions of error, . . . his claim of cumulative prejudice requiring reversal of conviction also fails." (LD 4 at 38.)  Particularly in light of petitioner's confessions to the charged conduct, it can hardly be said that any errors discussed above rendered petitioner's trial fundamentally unfair.  Petitioner's final claim that the cumulative effect of all errors unfairly prejudiced him should be rejected.

**CONCLUSION**

For the foregoing reasons, the Clerk of the Court IS HEREBY ORDERED to randomly assign a district judge to this case, and

////

////

33

1     IT IS RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

2     These findings and recommendations will be submitted to the United States District Judge

3     assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

4     being served with these findings and recommendations, any party may file written objections with

5     the court and serve a copy on all parties. The document should be captioned "Objections to

6     Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

7     filed and served within seven days after service of the objections.  The parties are advised that

8     failure to file objections within the specified time may result in waiver of the right to appeal the

9     district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the

10    party may address whether a certificate of appealability should issue in the event an appeal of the

11    judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must

12    issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

13    Dated:  November 16, 2020

14

15

16    _____
      DEBORAH BARNES
      UNITED STATES MAGISTRATE JUDGE

17    DLB:9
      DB/prisoner-habeas/sanc0455.fr

18

19

20

21

22

23

24

25

26

27

28